**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ARLANDA SMITH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :        CIVIL ACTION NO. |
| | :        1:09-CV-3008-RWS |
| M.L. MERCER, *et al.*, | : |
| | : |
| Defendants. | : |
| | : |

## ORDER

This case comes before the Court on Defendants' Motion for Summary

Judgment [106] and Plaintiff's Motion for a Preliminary Injunction [134]. After

a review of the record, the Court enters the following Order.

## I. Factual Summary[1]

---

[1]To the extent that Plaintiff denies the Defendants' facts without a specific
citation to record evidence or a proper evidentiary objection, the Court finds that
Defendants' facts are admitted. See LR 56(B)(2)(a)(2), NDGa ("This Court will deem
each of the movant's facts as admitted unless the respondent: (i) directly refutes the
movant's fact with concise responses supported by specific citations to evidence . . .;
(ii) states a valid objection to the admissibility of the movant's fact;") (emphasis
added). Plaintiff was previously directed to the Court's Local Rules regarding his
responsive statement of material facts, and, having ignored them, the Court will
enforce the Rules even in light of Plaintiff's *pro se* status. See Ord., Dkt. No. [128] at
6 ("Plaintiff is additionally reminded that he is to follow the local rules when drafting
his responsive statement of material facts.").

This case arises out of Plaintiff Arlanda Smith's alleged violation of a temporary restraining order. Defendant M.L. Mercer currently serves as a Sergeant with the DeKalb County Police Department ("DKPD"). Def.'s SMF, Dkt. No. [106-2] at ¶ 1. At the time of the incident, Mercer held the rank of a Master Police Officer and was certified by the Georgia Peace Officer Standards and Training ("POST") Council. Id. at ¶¶ 2-3. To become an officer, Mercer attended and graduated from the DeKalb County Police Academy, where she "received instruction on constitutional law, criminal investigations, procurement of warrants, and the standard of proof required for probable cause under state law." Id. at ¶¶ 4-5. Since graduation, Mercer has had an additional 432 hours of training. Id. at ¶ 6.

Mercer began working in the Domestic Violence Unit ("DVU") at DKPD in January 2006. Id. at ¶ 8. The DVU investigates serious domestic-violence crimes in DeKalb County, including aggravated stalking, aggravated assault, false imprisonment, and kidnapping. Id. at ¶ 9. Domestic violence victims are referred to the DVU when they are received by the District Attorney's office, the DeKalb County courts, or other non-profit agencies. Id. at ¶ 11.

2

In September 2006, Marjorie Smith–the Plaintiff's now ex-wife–was sent to the DVU after being referred by DeKalb County Magistrate Judge J. Roach. Id. at ¶ 12. At the DVU, Marjorie saw Defendant Mercer who recorded Marjorie's statement and investigated her case. Id. at ¶ 15-16. Specifically, Mercer interviewed Marjorie about a temporary restraining order she had taken out against the Plaintiff and his alleged violations of that order–that the Plaintiff had called Marjorie at work and had sent her a greeting card on their wedding anniversary which read, "For Better or Worse, For Sickness and Health, To Death Do Us Part." Dkt. No. [68-2] at 1. Following the initial interview, Mercer consulted with her supervisor about what to do next. Dkt. No. [106-2] at ¶ 19.

After that consultation, Mercer asked Marjorie additional follow-up questions and then checked for information regarding: 1) Marjorie and the Plaintiff's prior criminal records; 2) any police reports regarding the two; 3) whether either had any mental incapacities; and 4) and their substance abuse histories. Id. at ¶¶ 20-21, 29. That search revealed that an additional ex parte TRO was taken out by Marjorie's friend against the Plaintiff because it was alleged that Plaintiff had attempted to contact Marjorie at the friend's home. Id.

3

at ¶¶ 31-32. Mercer also discovered that Plaintiff had prior convictions for DUI and voluntary manslaughter, and he had been arrested 10 times. Id. at ¶¶ 35-37.

Mercer next checked court records to determine if either party had used the courts in a vindictive manner and specifically reviewed the case which led to the TRO. Id. at ¶¶ 22-23, 25. She also reviewed the greeting card and its envelope, noting that the card had been postmarked during the TRO's effective-period. Id. at ¶¶ 27-28.

Following that investigation, Mercer sought a warrant for Plaintiff's arrest before a Magistrate Judge. Id. at ¶ 39. Mercer advised the Judge of Marjorie's statements, the Plaintiff's prior criminal history, and the TROs' details. Id. at ¶¶ 39-42. Magistrate Judge Miller then issued an arrest warrant for the Plaintiff. Id. at ¶ 43. Following the warrant's issuance, Mercer completed a Domestic Violence Short Form packet which is used to provide prosecutors a brief summary of the case. Id. at ¶¶ 44-45. Prior to this incident, Mercer did not know Marjorie or the Plaintiff. Id. at ¶ 14.

In 2006, Defendants Jacquelyn Phillips and Solomon Daniels were both serving as Investigators in the DVU of the DeKalb County Sheriff's Office ("DCSO"). Id. at ¶¶ 50-54. Phillips and Daniels have been trained in "the use of

4

force, verbal judo, defensive tactics, warrants and affidavits, and firearms

training." <u>Id.</u> at ¶ 55.

The Sheriff's Office has the responsibility to serve warrants, including

those from DKPD. <u>Id.</u> at ¶¶ 58-59. In fact, only sworn police officers can serve

warrants. <u>Id.</u> at ¶ 60. The Sheriff's Office warrant policy describes a valid

warrant as one which contains the following information:

> **Warrant Contents** - A valid arrest warrant must contain specific
> information required by statute and related court decisions. Per
> O.C.G.A. § 17-4-41, such information includes:
> (1) A warrant number;
> (2) The authority and/or probable cause under which the warrant is
> issued;
> (3) Identity of the person who is to execute the warrant, **(generally
> addressed "To any sheriff, deputy sheriff, coroner, constable,
> marshal, or police officer")**;
> (4) The name and/or identification of the person to be arrested:
> > (a) If a name is not known, a full detailed description shall
> > be included (John/Jane Doe Warrant);
> > (b) If an arrest warrant is obtained, and the individual is
> > known and has not been arrested, the deputy shall include on
> > the warrant the arrested person's full name, last known
> > address, height, weight, age, sex, and date of birth, Social
> > Security number and driver's license number, FBI, SID, or
> > PID number, physical characteristics, if unusual, and
> > vehicle, if known;
> (5) The offense committed and Georgia state statute;
> (6) A description of the offense, including all elements of the
> offense;
> (7) The time, date, and place of the occurrence (**if known**) of the

5

offense, including the county in which it was committed;
(8) The victim's identity (could be the name of a person, company, or organization);
. . .
(10) The deputy's or prosecutor's signature, and
(11) Judge's signature.

Id. at ¶ 61. When Phillips and Daniels receive a warrant, they create a file with a picture of the wanted person, and review that person's characteristics, charges, and physical address. Id. at ¶¶ 63-64. They then attempt to serve the warrant at the address listed for the wanted individual. Id. at ¶ 65.

Phillips and Daniels received Plaintiff's misdemeanor arrest warrant on September 27, 2006. Id. at ¶¶ 66-69. Phillips was familiar with Plaintiff and his residence because she had served him with the initial TRO, but Daniels prepared for serving the warrant by pulling Plaintiff's picture as he had never previously met the Plaintiff. Id. at ¶¶ 73-74. However, neither Phillips nor Daniels investigated the warrant's underlying facts. Id. at ¶ 72.

The same day, Phillips and Daniels served the warrant on Plaintiff but because Plaintiff resisted arrest, those Defendants swore out a felony warrant for obstruction of an officer. Id. at ¶¶ 70-71, 75. Both Phillips and Daniels attended the probable cause hearing at the Magistrate Court for their obstruction

AO 72A
(Rev.8/82)

warrant, and Plaintiff's obstruction case was bound over to Superior Court. <u>Id.</u> at ¶ 76. As well, Plaintiff was taken before a Magistrate Judge for a commitment hearing on the TRO warrant on September 29, 2006. <u>Id.</u> at ¶ 46. For the TRO violation, Plaintiff was ordered to provide a $5,000 cash bond in exchange for his release and was ordered to stay away from Marjorie. <u>Id.</u> at ¶ 47.

Plaintiff originally filed this action against Defendant Mercer in her official and individual capacities, asserting federal constitutional claims pursuant to § 1983 and a state-law intentional infliction of emotional distress ("IIED") claim. On July 27, 2011, this Court allowed Plaintiff to amend his complaint to bring additional claims against Defendants Phillips and Daniels in their official and individual capacities that could not have been brought until Plaintiff's criminal case was resolved in his favor. Those claims include federal § 1983 claims under the Fourth and Fourteenth Amendments and state-law false arrest, false imprisonment, and malicious prosecution claims. The Defendants have now moved for summary judgment on all counts.

## II. Discussion

### A. Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

AO 72A
(Rev.8/82)

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

**B. Federal Official Capacity Claims**

Defendants first move for summary judgment on all official capacity claims against them. Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

9

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'" Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978). Thus, suits against government officials in their official capacities therefore should be treated as suits against the government. Kentucky v. Graham, 473 U.S. 159, 166 n.11 (1985).

### 1. Official Capacity Claims Against Mercer

In this case, Plaintiff seeks to hold DeKalb County liable for the allegedly unconstitutional acts and omissions of Mercer. Pursuant to § 1983, local

10

government units such as counties constitute "persons" subject to suit. Monell, 436 U.S. at 690. At the same time, however, the Supreme Court "has placed strict limitations on municipal liability under [Section] 1983." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).

In Monell, the Supreme Court held that "a municipality cannot be held liable under [Section] 1983 on a respondeat superior theory." 436 U.S. at 691. On the contrary, the Court held that local governing bodies, such as counties, can be sued under Section 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. In other words, to hold a county liable under Section 1983, a plaintiff must show that a county employee or policymaker committed the constitutional violation, and did so pursuant to a county policy or custom. Id. at 694; Grech, 335 F.3d at 1329. This requirement of a policy or custom "is intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action *for which the municipality is actually responsible*." Grech, 335 F.3d at 1329 n.5 (emphasis in original) (citing cases).

11

However, "although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91. But, Plaintiff must show a "consistent and widespread practice" of constitutional deprivations to prove local government liability for an unofficial custom. Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986).

Here, Plaintiff argues that Mercer's actions were taken pursuant to an official policy because she is a "final policymaker" of the DVU by virtue of her position as First Detective and the fact that she helped create the unit's protocols. Dkt. No. [130] at 2-3. However, Plaintiff does not dispute that Mercer reviewed her investigation and what steps she should take with her superiors; thus, she could not have been a final policymaker. As well, in the testimony Plaintiff cites, Mercer only states that she "assisted" in setting up the DVU's protocols–not that she was the final policymaker. Most tellingly,

12

Plaintiff does not specify what DeKalb County official policy he thinks is unconstitutional.

Plaintiff has also failed to produce any evidence that Mercer's actions were taken pursuant to a "widespread and consistent" unofficial policy which mandated violating the Fourth and Fourteenth Amendments. Thus, Defendants' Motion is **GRANTED** as to Plaintiff's official-capacity claims against Mercer.

## 2. Official Capacity Claims Against Phillips and Daniels

Unlike Mercer who works for DKPD, Phillips and Daniels work for DKSO. Thus, here, Plaintiff attempts to hold DeKalb County liable for actions taken by the Sheriff's Office. In accordance with <u>Monell</u>, DeKalb County can be held liable under Section 1983 for the acts or omissions of Phillips and Daniels only if, first, these Defendants acted on behalf of the county, and second, acted pursuant to an official policy or custom of the county. The Court thus undertakes to answer the threshold question of whether the individual defendants acted as county policymakers in this case. If Phillips and Daniels are state, rather than county, actors, there would be no basis on which to hold DeKalb County liable for their conduct under Section 1983. In this event, Plaintiffs federal-law official-capacity claims would have to be dismissed.

In <u>Manders</u>, the Eleventh Circuit held that whether a sheriff acts on behalf of the state or county is a question that cannot be answered absolutely, but one that, rather, "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." 338 F.3d 1304. Under this framework, the <u>Manders</u> court held that sheriffs act on behalf of the state, not the county, "in establishing use-of-force policy at the jail and in training and disciplining [their] deputies in that regard . . . ." <u>Id.</u> at 1305. In <u>Grech</u>, the Eleventh Circuit similarly concluded that sheriffs are state rather than county policymakers "for [their] law enforcement conduct and policies regarding warrant information" and for "the training and supervision of [their] employees in that regard." 335 F.3d at 1348. In reaching this particular conclusion, the <u>Grech</u> court noted that an "under Georgia law, counties lack authority and control over sheriffs' law enforcement functions." <u>Id.</u> at 1332. Indeed, the <u>Grech</u> court emphasized,

> In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement functions. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law enforcement duties and

AO 72A
(Rev.8/82)

policies.  Counties also have no role in the training or supervision of the sheriffs' deputies.

Id. at 1336.

Here, the Court finds that Phillips and Daniels were arms of the state in serving the warrant and filing obstruction charges. These duties go to the officers' law enforcement function which is taken on behalf of the State of Georgia and not DeKalb County. Moreover, even if Defendants were not arms of the state, Plaintiff has not pointed to any unconstitutional policy or custom which DeKalb County has even promulgated. Nothing within DKSO's warrant policy, as seen supra, is unconstitutional, and Defendant does not challenge that a Magistrate Judge found probable cause for the obstruction warrant. Thus, Defendants' Motion is **GRANTED** as to official capacity claims against Phillips and Daniels.

### C. Federal Individual Capacity Claims

The Defendants next argue that Plaintiff's Fourth Amendment false arrest claims and Fourteenth Amendment commitment-hearing claims are barred because Defendants did not violate Plaintiff's constitutional rights and Defendants are thus shielded by qualified immunity. Qualified immunity

15

protects government officials performing discretionary functions from being sued in their individual capacities. <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). Public officials are shielded under qualified immunity so far as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law for the court. <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993).

The Eleventh Circuit utilizes a two-part analysis for the defense of qualified immunity. First, the defendant official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. <u>Hartsfield v. Lemacks</u>, 50 F.3d 950, 953 (11th Cir. 1995). If the defendant meets this burden, the plaintiff must then demonstrate that the defendant violated clearly established law based upon objective standards. <u>Id.</u>

### 1. Defendants' Conduct Was Within Their Discretionary Authority.

Plaintiff does not challenge that Phillips and Daniels' conduct was discretionary; rather, Plaintiff argues that Defendant Mercer is not entitled to qualified immunity because she was carrying out ministerial duties. He asserts

that in the process of taking out the warrant and securing his arrest, Mercer

violated ministerial duties set out in O.C.G.A. §§ 17-4-20.1, 17-4-40(b)(2), 15-

10-62(b), and 15-10-63(d). However, the Eleventh Circuit has previously

rejected the discretionary vs. ministerial act distinction. See Jordan v. Doe, 38

F.3d 1559, 1566 (11th Cir. 1994). Rather, the Eleventh Circuit has broadly

defined "discretionary authority" in the qualified immunity context "to include

all actions of a governmental official that (1) 'were undertaken pursuant to the

performance of [her] duties," and (2) were 'within the scope of [her]

authority.'" Id. (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)).

As a law enforcement officer, Mercer took out the warrant and Plaintiff

was taken to a commitment hearing[2] pursuant to the performance of her duties,

---

[2]Plaintiff later argues that Defendant Mercer stated in discovery that she did not have an obligation to take the Plaintiff to a commitment hearing because she was not involved in arresting him. Dkt. No. [130] at 15. The Court has reviewed the docket and has been unable to locate this statement. Thus, the Court does not find that Plaintiff has created an issue of material fact that commitment hearings were not within her job description. In fact, because Plaintiff argues that Mercer is liable to him because she did not take him to a hearing, he must admit that taking him to a hearing was within her authority and that the decision not to take him was made in the performance of her duties. To argue otherwise would be to admit that Mercer had no constitutional obligation to the Plaintiff at first instance, and Plaintiff would clearly be unable to prove a deprivation.

But, even assuming a commitment-hearing was not within Mercer's discretion, the Court finds that because Plaintiff admitted he had a first-appearance or

AO 72A
(Rev.8/82)

and these actions were clearly within the scope of her authority. In fact, DKPD policy states that "once a law enforcement officer has obtained probable cause for the arrest of an individual, the officer should obtain a criminal arrest warrant." Dkt. No. [106-2] at ¶ 48. Thus, the Court finds Mercer's actions were within her discretionary authority. See Pair v. City of Parker Fla. Police Dep't, 383 Fed. App'x 835, 839 (11th Cir. 2010) (finding that because making arrests were within the officer's job-related duties and that state law authorized officers to seek warrants from judges, the officer completed a discretionary act when he took out a warrant).

But, turning to the specific statutes which Plaintiff cites, none of these duties were violated by Mercer. First, Plaintiff argues that Mercer violated O.C.G.A. § 17-4-20.1 by failing to investigate whether family violence–as defined by O.C.G.A. § 19-13-1–occurred. However, O.C.G.A. § 19-3-1(2) defines family violence to include stalking, and Georgia courts have found that sending a greeting card can constitute stalking. See Hall v. State, 487 S.E.2d 41, 44 (Ga. Ct. App. 1997) (finding that sending greeting cards and teddy bears,

commitment hearing, see infra, Plaintiff cannot state a constitutional violation on this point. Thus, the question of qualified immunity is ultimately of no consequence on the commitment-hearing claim.

18

*inter alia*, can constitute stalking). Here, Mercer has presented evidence that she

conducted an investigation into the greeting card, checked the postmark date,

researched the parties' prior domestic violence incidences, and the Plaintiff's

criminal history. In sum, Mercer did conduct an investigation under the statute.

Second, Plaintiff argues that Mercer had a duty to hold a preliminary

warrant application hearing before attempting to arrest the Plaintiff under

O.C.G.A. § 17-4-40. However, § 17-4-40(b) expressly states that a warrant

application hearing is only required where the "application is made for a

warrant by a <u>person other than a peace officer or law enforcement officer</u>."

O.C.G.A. § 17-4-40(b)(1) (emphasis added). Moreover, the provision goes on

to state that

> Nothing in this subsection shall be construed as prohibiting a judge
> or other officer from immediately issuing a warrant for the arrest of
> a person upon application of a person other than a peace officer or
> law enforcement officer if the judge or other officer determines
> from the application or other information available to the judge or
> other officer that:
> . . .
> (F) The offense for which application for the warrant is made
> consists of an act of family violence.

O.C.G.A. § 17-4-40(b)(6). Thus, Mercer was also not required to hold a warrant

application hearing.

Last, Plaintiff argues that under O.C.G.A. §§ 15-10-62(b) and 63(d),

Mercer was not allowed to arrest him before the time of trial as his alleged

violation was a misdemeanor. However, both of those statutes state that the

State of Georgia may authorize pre-trial arrest for any of its statutes; the pre-

trial arrest bar applies to county ordinances. Moreover, as seen supra, Georgia

law does allow for warrants to be issued for family violence acts. Thus,

arresting Plaintiff did not violate Mercer's duty.

### 2. Defendants Have Not Violated Clearly Established Laws.[3]

#### a. False Arrest

Defendants next argue that Plaintiff cannot prove a Fourth Amendment

false-arrest claim because Mercer had probable cause when she took out the

warrant, and, because the warrant was facially valid, Phillips and Daniels

properly arrested the Plaintiff. It is well-settled that an arrest made with

probable cause does not violate the Fourth Amendment. Wood v. Kesler, 323

F.3d 872, 878 (11th Cir. 2003). When an arrest is made pursuant to a warrant,

---

[3]Plaintiff appears to argue in his brief that he has brought a federal malicious prosecution claim against Phillips and Daniels. Dkt. No. [130] at 20. However, in reviewing Plaintiff's amended complaint, Plaintiff only brought a state-law malicious prosecution claim. See Dkt. No. [79] at 5 (citing O.C.G.A. § 51-7-40). Thus, the Court finds that Plaintiff has not plead a federal, malicious-prosecution claim.

AO 72A
(Rev.8/82)

it is considered a lawful arrest absent a showing of misconduct. An arrest made with probable cause is an absolute bar to a § 1983 claim for false arrest. <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir. 1996).

Here, Mercer applied for and received a warrant from a Magistrate Judge. Thus, the warrant is presumptively valid. Plaintiff argues that Mercer relied upon false information when she applied for the warrant. Specifically, he argues that the card was signed "Orlando" instead of "Arlanda" and that Mercer did not do a complete investigation of the crime. However, in reviewing the evidence presented, it is clear that Mercer did have probable cause. First, the greeting card appears to be signed "Arlanda," contrary to Plaintiff's allegations. As well, the record is replete with evidence that Mercer conducted an investigation: 1) she took Marjorie's statements; 2) she looked to the other police reports filed and looked for evidence of court abuse; 3) she checked Plaintiff's prior criminal history to assess his potential for violence; 4) she reviewed the case with her supervisors; and 5) she took the matter to an impartial judge who issued the warrant. Thus, the Court finds that Mercer had probable cause for the warrant.

AO 72A
(Rev.8/82)

Additionally, the Court finds that because the warrant was valid, Plaintiff's arrest by Phillips and Daniels was legal. See Ortega, 85 F.3d at 1525. Thus, Defendants' Motion is **GRANTED** as to Plaintiff's Fourth Amendment claims.

### b. Commitment Hearing

Defendants next move for summary judgment on Plaintiff's Fourteenth Amendment claim that he was entitled to a commitment hearing within 72 hours of his arrest. First, Plaintiff has admitted that he received a commitment hearing. Aff. Smith, Dkt. No. [118] at ¶ 12.[4] Thus, even if O.C.G.A. § 17-4-26 created a constitutionally-protected liberty interest, it was satisfied by the hearing as Plaintiff makes no allegation that he was not given prior notice. See O.C.G.A. § 17-4-26 ("Every law enforcement officer arresting under a warrant shall exercise reasonable diligence in bringing the person arrested before the

---

[4]The affidavit reads:
On September 30, 2006, a DeKalb County Jail detention officer took me along with an unknown number of other misdemeanor jail inmates to a room across from the DeKalb County Jail Library and next to the room used for GED classes. We were instructed by the detention officer that a judge would arrive and we were instructed by the [detention] officer not to speak to the judge. When the judge arrived, the judge individually read our names and informed us of the charges against us and the respective bond amounts.

22

judicial officer authorized to examine, commit, or receive bail and in any event to present the person arrested before a committing judicial officer within 72 hours after arrest. The accused shall be notified as to when and where the commitment hearing is to be held. An arrested person who is not notified before the hearing of the time and place of the commitment hearing shall be released."). Additionally, Plaintiff has not pointed to one decision of the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court which clearly established that a commitment hearing is a constitutionally-protected liberty interest. Thus, Defendants' Motion [106] is **GRANTED** on the individual capacity Fourteenth Amendment claims.

### D. State Law Claims

Defendants argue that Plaintiff's state-law claims of intentional infliction of emotional distress against Mercer, and malicious prosecution, false arrest, and false imprisonment against Phillips and Daniels are barred by sovereign immunity in their official capacities and official immunity in their individual capacities. Under the Constitution of the State of Georgia, "sovereign immunity extends to the state and all of its departments and agencies," and "can only be waived by an Act of the General Assembly which specifically provides that

23

AO 72A
(Rev.8/82)

sovereign immunity is thereby waived and the extent of the waiver." GA. CONST. art. I, § 2, ¶ 9(e). The Georgia Supreme Court has held that "departments and agencies" of the State include counties, which are thus entitled to sovereign immunity from suit in accordance with this constitutional provision. Gilbert v. Richardson, 452 S.E.2d 476, 479 (Ga. 1994). "Sovereign immunity is not an affirmative defense . . . that must be established by the party seeking its protection. Instead, immunity from suit is a privilege that is subject to waiver by the State, and the waiver must be established by the party seeking to benefit from the waiver." Forsyth Cnty. v. Greer, 439 S.E.2d 679, 681 (Ga. Ct. App. 1993).

The Court concludes that Plaintiff's state law claims against the Defendants in their official capacities are barred by the doctrine of sovereign immunity, as Plaintiff has produced no evidence and cited no statutes that indicate DeKalb County's sovereign immunity has been waived for purposes of this suit. Thus, Defendants' Motion [106] is **GRANTED** as to all official-capacity state-law claims.

Additionally, the Court finds that Plaintiff's remaining state law claims

against the Defendants individually are barred by official immunity.[5] The state

constitutional provision governing official immunity provides as follows:

> [A]ll officers or employees of the state or its departments and
> agencies may be subject to suit and may be liable for injuries and
> damages caused by the negligent performance of, or negligent
> failure to perform, their ministerial functions and may be liable for
> injuries and damages if they act with actual malice or with actual
> intent to cause injury in the performance of their official functions.
> Except as provided in this subparagraph, officers and employees of
> the state or its departments and agencies shall not be subject to suit
> or liability, and no judgment shall be entered against them, for the
> performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the

term "official functions" refers to "any act performed within the officer's or

employee's scope of authority, including both ministerial and discretionary

acts." Gilbert, 452 S.E.2d at 483.  Accordingly, under this definition, the

constitutional provision "provides no immunity for ministerial acts negligently

performed or for ministerial or discretionary acts performed with malice or an

intent to injure." Id. "It however, does provide immunity for the negligent

performance of discretionary acts . . . ." Id. In sum, under Georgia law, "a

public officer or employee may be personally liable only for ministerial acts

_____

[5]Plaintiff admits that he cannot bring his malicious prosecution, false arrest,
and false imprisonment claims against Phillips and Daniels. Dkt. No. [130] at 22.

AO 72A
(Rev.8/82)

negligently performed or discretionary acts performed with malice or intent to injure." Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003).

As a threshold matter, the Court concludes that Plaintiff has failed to show any actual malice or intent to injure on the part of the Defendants. For purposes of official immunity, "'actual malice' requires a deliberate intention to do wrong, and denotes express malice or malice in fact. It does not include willful, wanton or reckless conduct or implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." Daley v. Clark, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006). In this case, Plaintiff has not produced any evidence suggesting that the Defendants acted with the deliberate intention to harm Plaintiff. Accordingly, the Defendants can be held liable under state law only for the negligent performance of ministerial acts; as to any discretionary acts, in light of Plaintiff's failure to show actual malice, he is entitled to official immunity.

Whether an act is ministerial or discretionary depends on the nature of the act and not the actor's position. Id. at 380. "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Id. By

contrast, a discretionary act is one that "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. The Court finds that all of Plaintiff's state law claims–IIED, malicious prosecution, false arrest, and false imprisonment–are based upon the Defendants' discretionary conduct in deciding to take out and effectuate a warrant. See Marshall v. Browning, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011) ("We conclude, and Marshall does not dispute, that Browning, a police detective, was acting within her discretionary authority in investigating the case, obtaining search and arrest warrants, and in executing those warrants"). Thus, because Plaintiff has not presented evidence of actual malice, Defendants' Motion [106] is **GRANTED** as to all individual capacity state-law claims.

**III. Conclusion**

Defendants' Motion for Summary Judgment [106] is **GRANTED**. Accordingly, Plaintiff's Motion for a Preliminary Injunction [134] is **DENIED, as MOOT**.

AO 72A
(Rev.8/82)

**SO ORDERED**, this  13th  day of July, 2012.


RICHARD W. STORY
United States District Judge

AO 72A
(Rev.8/82)